IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| TRANSCOLOR CORP. | * | Case No. 98-6-5483-JS |
| | * | |
| ***************************************** | * | |
| | * | |
| MARSHALL & ILSLEY TRUST CO., N.A., et al. | * | |
| Plaintiffs, | * | |
| | * | Adv. Proc. No. 05-9103-JS |
| v. | * | **Civil No. L-06-495** |
| | * | |
| MORTON M. LAPIDES, et al. | * | |
| Defendants. | * | |
| | * | |

## MEMORANDUM

Plaintiff Marshall & Ilsley Trust ("M&I Trust") has sued Morton Lapides, Pamela Lapides, and the trustees of Pamela Lapides's irrevocable QTIP trust in an adversary proceeding that was automatically referred to the United States Bankruptcy Court for the District of Maryland under 28 U.S.C. § 157(a). Now pending is the defendants' Motion to Withdraw Automatic Reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d).[1] For the reasons stated herein, the Court will, by separate Order, DENY the motion.

### I.     Background

In 1992, Alleco, Inc. ("Alleco") filed Chapter 11 proceedings in the bankruptcy court for the District of Maryland. (No. 92-1-3268-SD). On January 22, 1998, National City Bank of Minneapolis[2] ("NCB") obtained a judgment in a Michigan state court in the amount of $6,772,161.00 against Alleco and its subsidiary, Transcolor, Corp. ("Transcolor"). In November,

---

[1]     Her co-defendants have joined the motion.

[2]     M&I Trust is the successor-in-interest to NCB.

1998, Transcolor's creditors instituted involuntary Chapter 7 bankruptcy proceedings against it in the District of Maryland.  (No. 98-6-5483-JS).  The Court entered an order for relief and appointed a bankruptcy trustee, Monique Almy, in April 1999.

On August 13, 1999, NCB filed an adversary proceeding, seeking to "pierce" Transcolor and Alleco's "corporate veil" to reach the assets of Morton Lapides ("Mr. Lapides"), the director and sole shareholder of Alleco.  (No. 99-05627-JS).[3]

On June 13, 2003, the bankruptcy court "pierced the corporate veil" and entered judgment against Mr. Lapides in the amount of $7 million, the amount of the Michigan judgment plus interest and costs.  In re: Transcolor Corp., 296 B.R. 343 (Bkrtcy. D. Md. 2003).  The Court found that fraudulent conveyances occurred between Mr. Lapides and his corporations and that Mr. Lapides should be individually liable to NCB for Transcolor and Alleco's fraud.  Id.

On November 21, 2005, M&I Trust, the successor-in-interest to NCB, filed an adversary proceeding against Mr. Lapides, his wife Pamela ("Mrs. Lapides"), and the trustees of an irrevocable QTIP trust (Matthew Lapides and Craig Dranbauer).  M&I Trust seeks to have the Court declare that Mr. and Mrs. Lapides are not tenants-by-the-entirety in certain real and personal property because the deeds conveying the property are unenforceable.[4]  M&I Trust wishes to sever Mr. Lapides's share of the property to satisfy the $7 million judgment against him.

Several motions were already filed in the bankruptcy court and at least two hearings had already been held by the time that the defendants moved to withdraw the reference three months

---

[3]   On January 24, 2001, National City Bank of Minneapolis also filed a claim for $6,772,161.00 against the Transcolor bankruptcy estate.

[4]   The deeds for the real and personal property, that purport to create the tenancy-by-the-entirety, were executed the day before Mr. and Mrs. Lapides were married.  Accordingly, M&I Trust argues, they are void.  The Lapideses have or will transfer some of that property to the QTIP Trust.

2

later, on February 22, 2006.[5]  After the defendants filed the motion to withdraw the reference to the bankruptcy court, M&I Trust filed a motion for summary judgment.  The bankruptcy court has deferred ruling on the various outstanding issues pending a decision from this Court on the withdrawal of the reference.

## II.     Standard

Under § 157(d) a district court "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).  The district court has "broad discretion" in deciding whether reference should be withdrawn.  In re Millenium Studios, Inc. v. Man Roland, Inc., 286 B.R. 300, 303 (D.Md. 2002). In determining whether cause exists, the Court considers: 1) whether the proceeding is "core"; 2) the need for uniform administration of bankruptcy proceedings; 3) judicial economy; 4) efficient use of creditor and debtor resources; 5) reduction of forum shopping; and 6) preservation of the right to a jury trial.  Id.  The defendant bears the burden of showing cause.  Id.

## III.    Analysis

As a practical matter, it is rare to withdraw the reference for a core proceeding.  The fact that this matter is non-core, therefore, is not a strong factor in favor of withdrawing the reference.[6]

---

[5] Defendants have filed motions to dismiss, and also filed a third-party complaint against Venable, LLP, which represents M&I Trust.  The third-party complaint states that attorneys at Venable prepared the deeds at issue in 1978 (at the time the Lapideses wed), and are liable for malpractice if the deeds are void.

In a letter dated July 17, 2006, Mr. Bowie raised the issue that the undersigned was a partner in Venable, Baetjer & Howard (a predecessor to Venable, LLP).  The undersigned joined the bench in 1991, and recused himself for several years from cases in which Venable attorneys appeared.  Recusal from such cases for a limited period is the practice of judges joining this bench.

[6] M&I Trust concedes in its Amended Complaint that its adversary proceeding is not "core."  A non-core proceeding is within the jurisdiction of the bankruptcy court if it is "otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1).  "Related to" means "the outcome of that proceeding could. . . conceivably have any effect on the estate being administered in bankruptcy. . . Thus the proceeding need not necessarily be against the debtor or against the debtor's property." The Traveler's

3

The defendants have the burden of showing cause, at least at this juncture, and their argument centers on "judicial economy." The Court recognizes that in non-core proceedings, the bankruptcy judge makes findings of fact and conclusions of law which are presented to the district judge for final judgment.[7] Nevertheless, the bankruptcy court's familiarity with the underlying bankruptcy and the current case would promote judicial economy, aid the uniform administration of bankruptcy proceedings, and expedite the process.

The transactions at issue have as a background a long bankruptcy proceeding involving Mr. Lapides that Judge Schneider has been presiding over since at least 1998. He also has knowledge of the current proceeding, which has been pending before him since November, and he has heard oral argument on some of the matters, including, it appears, a Motion for Temporary Restraining Order. Furthermore, fraudulent conveyances are the "bread and butter" legal issues of the bankruptcy court. These weigh against withdrawing the reference.

Moreover, for policy purposes, the Court should note that the motion to withdraw the reference was filed three months after the adversary proceeding was filed in the bankruptcy court. Several motions were filed and briefed, and the bankruptcy court has held two hearings.[8] For policy purposes, this should weigh strongly against withdrawal of the reference. As a general matter, a

---

Insurance Co. v. Goldberg, 135 B.R. 788, 790 (D. Md. 1992) (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)); see also Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.5 (1995). The outcome of this matter will impact the satisfaction of the debts of Transcolor and Alleco. Because Mr. Lapides has been held liable for the $7 million debt to M&I Trust; a portion of his property may go to satisfy the debt.

[7] "In [non-core] proceedings, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgement shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

[8] It does not appear that Judge Schneider has issued any rulings.

motion filed after a bankruptcy judge has handled a case for a period of time raises heightened concerns about forum shopping.

The defendants' most compelling argument in favor of withdrawal is that they assert a right to a jury trial on all the issues in the Amended Complaint. A bankruptcy court does not have power to conduct jury trials (absent the express consent of the parties). See In re: Stansbury Poplar Place, Inc., 13 F.3d 122, 128 (4th Cir. 1993). This does not mean, however, that when there is a possibility of a jury trial, a reference must be withdrawn immediately. Id.

The plaintiff argues that this motion is premature. The Court agrees. The pending motions to dismiss and the motions for summary judgment may obviate the need for trial. The defendants have not filed an answer, much less a jury demand. The Court will, however, consider a renewed motion to withdraw the reference if and when this matter becomes ready for trial. See In re: Furniture Rentors of America, Inc., 162 B.R. 728 (D. Md. 1994) (reference to stand until after a pre-trial conference).

**IV.    Conclusion**

Taking into account the totality of the circumstances, the Court finds that it serves the interests of judicial economy to leave the reference with the bankruptcy court at this time. The Court is willing, however, to revisit the question if and when the matter becomes ripe for trial.

Dated this 29th day of August, 2006.

                                                    /s/
                                        Benson Everett Legg
                                        Chief Judge