Date signed October 05, 2007



**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| TRANSCOLOR CORPORATION, | * | Case Nos. 98-65483-JS |
| Debtor, | * | (Chapter 7) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| MARSHALL & ILSLEY TRUST COMPANY, N.A. | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Adv. Pro. No. 05-9103-JS |
| | * | |
| MORTON M. LAPIDES, SR., Et al | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION DISMISSING COMPLAINT
### FOR LACK OF SUBJECT MATTER JURISDICTION

The matters before the Court are the defendants' motions to dismiss this

adversary proceeding and the plaintiff's motion for summary judgment. The issue

presented by the motion to dismiss is whether, after the award of a money judgment by the bankruptcy court against the alter ego of a debtor corporation in an earlier adversary proceeding, this Court has subject matter jurisdiction over a second suit brought by the successor in interest of the judgment creditor to enforce the judgment by avoiding alleged fraudulent transfers of real and personal property by the alter ego to other non-debtor defendants.  Because this Court has determined that it lacks "related to" subject matter jurisdiction over the instant suit, the motion to dismiss will be granted.

## FINDINGS OF FACT

1.  The plaintiff, the Marshall & Ilsley Trust Company, N.A. ("M&I Trust"), is a national banking organization, chartered under the laws of the United States, and located at 111 East Kilbourn Avenue, Milwaukee, Wisconsin.  It is the successor in interest to National City Bank of Minneapolis ("NCB"), and the successor trustee to an indenture over which NCB was trustee.  Complaint, ¶ 1.

2.  The defendant, Morton M. Lapides, Sr. ("Morton"), is the sole owner or majority stockholder of the following corporations: Valley Rivet Co., V. R. Holdings, MML, Inc. Alleco, Inc., Transcolor Corporation, Transcolor, Inc., Transcolor West, Transcolor South and Apparel Funding Group, now known as American Basics Company.  Morton was president of MML, Inc., a Maryland corporation that bore his

2

initials and subsequently merged into a successor corporation, V. R. Holdings, Inc. ("V.R."), a Delaware corporation. He was the sole director and shareholder of Alleco, Inc. ("Alleco"), which directly or indirectly owned and controlled Alleco Financial Corp, Transcolor Corporation, Transcolor, Inc., and other companies. Through Alleco, Morton owned 98.5% of the stock of Transcolor Corporation, which in turn owned 100% of the stock of Transcolor, Inc. Morton controlled Transcolor West, Transcolor South, and American Basics Company, which were subsidiaries of Transcolor, Inc.

3. The defendant, Pamela W. Lapides ("Pamela"), is the wife of Morton.

4. The defendants, Craig Dranbauer ("Craig") and Matthew A. Lapides ("Matthew"), are the trustees of the Pamela W. Lapides Irrevocable Q-Tip Trust.[1]

5. Morton, Pamela and Craig are residents of the State of Maryland.

6. Matthew is a resident of the State of Pennsylvania.

---

[1]"Q-tip trust" is a term of art based upon the acronym for "qualified terminable interest property trust." Such a trust contemplates the transfer of assets from one spouse to another by which the grantor directs the income from his or her assets to the other spouse for life, but has the power to distribute the assets upon the spouse's death. The trust is "qualified" in the sense that the decedent's estate of the first spouse to die qualifies for the marital deduction under the Internal Revenue Code. Q-tip trusts are usually employed in second marriage situations in order to preserve the grantor's assets for his family from the heirs of the second spouse, because the corpus passes to the grantor's designated beneficiaries upon the death of the surviving spouse.

3

7.  On October 19, 1978, Morton executed two deeds in favor of himself and Pamela, his then-future  wife.  The first of these was a deed of real property located in Anne Arundel County (the "Annapolis Property") to Morton and Pamela purportedly as tenants by the entireties (the "1978 Annapolis Property Deed"). The second deed was executed by Morton in favor of himself and Pamela and conveyed personal property (the "1978 Personal Property Deed") to them as joint tenants with rights of survivorship.  The deeds were acknowledged on October 19, 1978.

8.  On the following day, October 20, 1978, Morton and Pamela were married.

9.  On November 24, 1978, the 1978 Annapolis Property Deed was recorded among the Land Records of Anne Arundel County.

10.  On June 1, 1992, Alleco filed a voluntary Chapter 11 bankruptcy petition in this Court (Case No. 92-13268-SD).  The petition indicated that Alleco was a holding company and that 100% of its stock was owned by MML, Inc.  On June 1, 1992, Alleco filed a Chapter 11 Plan of reorganization, which it amended on August 19, 1992, and again on November 23, 1992.  On September 17, 1993, the plan was confirmed.

11.  The confirmed plan approved an indenture executed on October 1, 1993, between Alleco and National City Bank of Minneapolis ("NCB"), the indenture trustee.  The indenture obligated Alleco to issue secured notes to certain creditors.

12.   Under a supplemental indenture dated July 31, 1995, in which NCB continued to serve as trustee, Transcolor Corporation was added as an additional obligor on the Secured Notes.  Morton signed the supplemental indenture on behalf of both Alleco and Transcolor.  The supplemental indenture prohibited Transcolor and Alleco from transferring assets unless the transferee assumed their obligations.

13.   On November 16, 1995, Morton and Pamela (collectively referred to as "the Lapideses") transferred the Annapolis Property to Mark A. Pudinski ("Pudinski"), a "strawman," who immediately transferred the property back to Morton and Pamela in two parcels, for the nominal consideration of five dollars.  The November 16, 1995 transactions involved three separate deeds.

14.  Parcel A contained the Lapideses' residence located at 2077 Maidenstone Road.  Parcel B was located at 2075 Maidenstone Road.

15.  On January 22, 1998, NCB obtained a judgment in a Michigan state court against Alleco and Transcolor Corporation in the amount of $6,772,161.

16.  On November 2, 1998, secured creditors, Dean H. Foltz, Henrietta M. Foltz, and Ronald S. Weidenbach Family Trust, filed an involuntary Chapter 7 bankruptcy petition against Transcolor Corporation in this Court (Case No. 98-65483-JS).  On April 30, 1999, a Chapter 7 order for relief was entered, and Monique D. Almy, Esquire, was appointed trustee ("Transcolor Trustee").

17.  On August 13, 1999, NCB filed Adversary Proceeding No. 99-05627-JS against Transcolor West, Inc.,[2] American Basics Company,[3] Transcolor Corporation,[4] MML, Inc,[5] Alleco, Inc.,[6] and Morton,[7] in which it alleged misrepresentation, concealment by breach of duty to disclose and fraudulent conveyances.

18.  On December 11, 2000, voluntary Chapter 11 petitions filed in the United States Bankruptcy Court for the District of Delaware by V. R. Holdings, Inc. and Valley Rivet Co. were transferred to this Court and assigned case nos. 01-52239-JS and 01-52379-JS, respectively.

19.  On November 14, 2001, the trustee in V. R. Holdings filed an emergency motion to sell the assets of the debtor.  On November 19, 2001, the case was converted to a proceeding under Chapter 7.  In January 2001, the trustee moved for

---

[2]  Transcolor West Inc., is a subsidiary of Transcolor, Inc.

[3]  Formerly known as Apparel Funding Group, American Basics Company is a subsidiary of Transcolor, Inc.

[4] Transcolor Corporation is a subsidiary of Alleco, Inc., and owned 100% of the stock in Transcolor, Inc.

[5] 100% of the common stock of Alleco was owned by MML, Inc. At that time MML, Inc., no longer existed as a separate entity, having merged with a successor corporation, V.R. Holdings.   The case was dismissed as to MML, Inc.

[6] Alleco owned 98.5 % of the stock of Transcolor Inc., the other 1.5% is owned by public investors.

[7]  Morton M. Lapides owned or controlled all of the defendant corporations and their subsidiaries in that action.

the approval of a settlement with the Environmental Protection Agency, which V. R. Holdings opposed.  On March 19, 2002, this Court approved the settlement.

20.  Eight days later, on March 27, 2002,  the Lapideses transferred Parcel A to the Pamela W. Lapides Irrevocable  Q-Tip Trust ("Q-Tip Deed").

21.  In the meantime, on June 13, 2003, this Court issued its opinion in Adversary Proceeding No. 99-05627-JS, in which it granted the complaint against Morton and Alleco and entered a money judgment against Morton in the  stipulated sum of $7 million in favor of NCB, concluding (1) that he was liable for the corporation's fraud and also independently liable for torts committed by him as an agent of the corporate debtor; (2) that NCB was damaged by the conduct of Transcolor and Morton; and (3) that based upon the evidence presented at trial, Alleco and Morton intended to deceive and defraud NCB.  The order also provided that "the plaintiff's claim against Transcolor will be allowed in [the same] amount without the necessity of entering a judgment." *Id.*

22.  The opinion was reported in *National City Bank of Minneapolis v. Lapides, (In re Transcolor Corp.)*, 296 B.R. 343 (Bankr. D.Md. 2003).  In holding Morton and Alleco jointly and severally liable for damages, this Court held that "the bankruptcy court in which the case is commenced is the proper forum for its administration and the disposition of motions and adversary proceedings brought by or against the debtor,

7

debtor-in-possession or bankruptcy trustee, and third parties regarding property of the debtor or the debtor's estate." 296 B.R. at 353-4.

23. In holding that it possessed subject matter jurisdiction over the suit, this Court held that the dispute was within the core jurisdiction of the bankruptcy court to hear and determine, because the plaintiff's proof of claim was the cause of action underlying the complaint to pierce the corporate veil and to hold liable the corporate debtor's insider, and also to recover fraudulent conveyances from him. 296 B.R. at 355-6. This Court also held that it possessed "related to" jurisdiction. *Id*. at 356.

24. Based upon a finding by this Court that it had core jurisdiction over the adversary proceeding to recover fraudulent conveyances received by Morton and to "[vindicate] its equitable powers in the punishment of misconduct committed under its aegis by debtors and nondebtors alike," *id*. at 357, a final money judgment was awarded against Morton in favor of the Transcolor Trustee and NCB, the predecessor to M&I Trust, which now seeks by the instant adversary proceeding to recover that judgment.

25. NCB recorded the judgment in Anne Arundel County, Maryland, where the Lapideses' real property was located.

26. On August 5, 2003, after the appeal period had expired, Morton filed a motion to extend time to appeal, which was denied. On August 27, 2003, Morton

appealed the denial of the motion to the U.S. District Court for the District of Maryland.

27. On October 29, 2003, Pamela, Craig and Matthew created the Pamela W. Lapides Irrevocable Q-Tip Trust ("Q-Tip Trust").

28. On December 2, 2003, the District Court [Quarles, Jr., J.] dismissed Morton's appeal.

29. Morton filed a motion for relief from judgment [P. 175] and a motion for recusal of the undersigned judge [P. 177].

30. In attempting to locate assets of the defendants, NCB filed a motion to compel discovery [P. 174] and a motion to compel production of documents [P. 183].

31. Morton's failure to satisfy the $7 million judgment prompted NCB to file a motion for contempt [P. 201] and a motion for the examination of the Lapideses [P. 211].

32. On February 20, 2004, the Q-Tip Trust sold Parcel B to Robert Welsh for $300,000 (the "Welsh Sale").

33. On June 3, 2004, the Alleco case (Case No. 92-13268-SD) was converted to Chapter 7 and was dismissed on December 2, 2004.

34.  This Court granted the motion of NCB for an examination, and conducted the examination on September 26, 2005, December 15, 2005, January 9, 2006, and January 23, 2006.

35.  At the examination on September 26, 2005, NCB learned for the first time that Morton and Pamela were not married on October 19, 1978, at the time the Annapolis Property Deed was executed, which purported to convey the Annapolis Property to them as tenants by entireties.

36.  On November 21, 2005, M&I Trust, as successor in interest to NCB, filed the instant complaint (Adversary Proceeding No. 05-9103-JS) against Morton, Pamela, Craig and Matthew, in which it sought to recover the transfers of real and personal property from Morton to satisfy the $7 million judgment against Morton. Subject matter jurisdiction was premised upon 28 U.S.C. § 1334. Complaint, ¶ 5.

37.  Count I sought a declaratory judgment that the Annapolis Property was not held as tenants by entireties but rather as either a joint tenancy or a tenancy in common; Count II sought to avoid the strawman deeds by which Morton and Pamela transferred the Annapolis property to themselves as tenants by the entireties, based upon the assertion that the transfer was fraudulent as to creditors and may be avoided pursuant to the Maryland Uniform Fraudulent Conveyance Act, Maryland Comm. Law Code, §§ 15-201-214; Count III sought a declaration that the Personal Property

10

Deed from Morton to Pamela dated October 19, 1978, did not create a tenancy by the entireties, but rather a joint tenancy, so that Morton's half interest in personal property may be attached by the judgment creditor; Count IV asserted that the transfer of Morton's one-half interest in the Annapolis Property to the Q-Tip Trust constituted a voidable fraudulent transfer under the Maryland Uniform Fraudulent Conveyance Act; Count V asserted that the money received from the Welsh Sale was voidable to the extent that it was made for no consideration to Morton, and was therefore avoidable as a fraudulent transfer; and Count VI sought to enjoin the Lapideses, the Q-Tip Trust or the trustees of the Q-Tip Trust from transferring title, encumbering, damaging or wasting the Annapolis Property and the personal property and from transferring the proceeds of the Welsh Sale that remained in their possession.[8]

38.  On December 27, 2005, Morton and Pamela filed separate answers [PP. 16 and 19] to the complaint.

39.  On January 6, 2006,  Morton and Pamela filed a third-party complaint [P. 26] against Venable LLP, the law firm of plaintiff's counsel, in which it was alleged

---

[8]On October 2, 2006, the plaintiff filed an emergency motion for temporary restraining order [P. 97] to enjoin the Lapideses from encumbering the Annapolis Property through a $4 million refinance.  After a hearing was held on October 4, 2006, the parties filed a stipulation on October 10, 2006, that permitted the refinance to proceed, with the proviso that funds received by the Lapideses over and above the amount needed to pay off the existing mortgage indebtedness would be placed into escrow.  Stipulation [P. 105].

for the first time that members of the firm or its predecessor had represented Morton in the preparation of the 1978 deeds, and therefore that plaintiff's counsel should be disqualified in the instant adversary proceeding and be held liable for negligence in drafting the 1978 deeds, should they be determined not to have passed title to Morton and Pamela as tenants by the entireties.

40.  On February 6, 2006, the plaintiff filed a motion to amend the complaint [P. 36] and to permit the Transcolor Trustee to intervene as a party plaintiff.  The motion to intervene was later withdrawn.

41.  On February 22, 2006, Pamela filed the instant motion to dismiss [P. 42] the amended complaint, which was subsequently joined by the Q-Tip Trust and Morton.  The motion to dismiss pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6), asserted, among other things, that (1) this Court lacks subject matter jurisdiction over the instant suit and (2) the cause of action is barred by limitations.

42.  On the same date, Pamela filed a motion to withdraw the reference [P. 44].

43.  On March 8, 2006, the plaintiff filed the instant motion for summary judgment [P. 51].

44.  On August 29, 2006, the U.S. District Court (Legg, C.J.), issued a Memorandum Opinion [P. 94], and denied by separate order [P. 95] the motion to

withdraw the reference.  The District Court held that the motion could be renewed when and if the matter proceeds to trial after the bankruptcy court considers the pending motions.

45.  Since the filing of the instant adversary proceeding on November 21, 2005, the underlying Chapter 7 bankruptcy case of Transcolor Corporation has been dormant.  In the earlier lawsuit, *National City Bank v. Lapides*, Adv. Proc. No. 99-5627, in which the $7 million judgment was entered, the Clerk of this Court issued a notice of contemplated dismissal [P. 237] on August 23, 2007.[9]  On August 28, 2007, M & I Trust filed a response [P. 239] to the notice, in which it stated that the adversary should not be closed because the judgment has not been paid, and because the present adversary proceeding to collect the judgment is still pending.

## DISCUSSION

The motion to dismiss for lack of subject matter jurisdiction raises issues of the extent of the jurisdiction of a bankruptcy court to enforce its own judgments, the nature of that jurisdiction and whether it extends to provide a forum for the instant adversary proceeding.  The consideration of these issues necessitates the following

---

[9]The Court notes that the notice was entered in error.  The proper disposition of an adversary proceeding that has been fully litigated to judgment is *closure*, not *dismissal*.  Nevertheless, the response of M & I to the notice is noteworthy because it reinforces the plaintiff's assertion that the present suit is premised upon collecting the judgment entered by this Court in the earlier one.

discussion of bankruptcy jurisdiction as it is properly exercised in the federal courts as to nonbankruptcy subjects and its limitations in favor of the general jurisdiction of state courts.  The following concise summary of the jurisdictional framework of the federal and state judicial systems in the United States is a fitting point at which to begin the discussion:

> The authority of courts derives from constitutional provisions or from statutory provisions adopted in the exercise of a legislative authority, express or implied, to establish courts and to provide for their jurisdiction.  Article III of the United States Constitution calls for a Supreme Court and authorizes the creation of inferior federal courts and also defines the kinds of proceedings that Congress may authorize them to entertain.  Article I of the Constitution has been construed to confer upon Congress a further authority to create other tribunals and to invest them with jurisdiction of disputes arising from matters within the authority of Congress to regulate.  State constitutions typically create the principal elements of a judicial system and permit the legislature to create other judicial and administrative tribunals.

> All courts and tribunals in the federal system are of restricted jurisdiction, in that they have subject matter jurisdiction only of such proceedings as are expressly or impliedly consigned to them.  This is a consequence of the legal structure of American federalism, in which the authority of the Federal Government is itself restricted to matters delegated to it by the Constitution.  In contrast, the principal trial court in state court systems is a court of general jurisdiction, i.e., it has authority to adjudicate any justiciable controversy that is not exclusively consigned to some other tribunal.  A comparable general appellate jurisdiction may be reposed in the state's highest appellate court.  But such general jurisdictional authority has it's source in the state constitution and hence it is consistent with the principle that authority too adjudicate is dependent on provision of law.

The provisions of law investing a court or other tribunal with authority to adjudicate a type of controversy are referred to as the rules of subject matter jurisdiction and sometimes as rules of "competency" or "competence."

RESTATEMENT (SECOND) OF THE LAW OF JUDGMENTS § 11 Subject Matter Jurisdiction (1982).

The United States Constitution authorized Congress to establish "uniform laws of bankruptcy." U.S. Const., Art. I, Sec. 8, cl. 4. In 1978, Congress enacted the Bankruptcy Reform Act, which established the U.S. Bankruptcy Code as Title 11 of the United States Code. After the broad grant of jurisdiction conferred by Congress upon bankruptcy courts under the 1978 Act was held unconstitutional by the Supreme Court in *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed.2d 598 (1982), Congress established the present framework of bankruptcy jurisdiction applicable to the federal courts by its enactment in 1984 of Sections 157 and 1334 of the United States Judicial Code (28 U.S.C.). Under the current jurisdictional statute, "[b]ankruptcy judges can hear and determine all cases and core proceedings arising under the Bankruptcy Code, subject to review by the district courts under 28 U.S.C. § 158." *U.S. v. Wilson*, 974 F.2d 514, 516 (4th Cir. 1992).

"The bankruptcy court derives its jurisdiction from the district court. *See* 28 U.S.C. § 157(a), (b)(1). District courts have 'original and exclusive jurisdiction of all

cases under title 11,' and 'original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.' 28 U.S.C. § 1334(a), (b)." *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 835 (4th Cir. May 17, 2007).

Section 1334 of 28 U.S.C., upon which the instant complaint was premised, provides as follows:

### § 1334. Bankruptcy cases and proceedings

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

(d) Any decision to abstain or not to abstain made under subsection (c) (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title. Subsection (c) and this subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

(e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction–

(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and

(2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.

28 U.S.C. § 1334.  Thus, "Section 1334 grants jurisdiction to the district courts over four types of bankruptcy matters: (1) cases under title 11, *i.e.*, the bankruptcy case itself; (2) proceedings arising under title 11; (3) proceedings arising in cases under title 11; and (4) proceedings related to cases under title 11."  *Kirk v. Hendon (In re Heinsohn)*, 231 B.R. 48, 55-6 (Bankr. E.D. Tenn. 1999), citing *Beneficial Nat. Bank USA v. Best Receptions Systems, Inc. (In re Best Reception Systems, Inc.)*, 220 B.R. 932, 942 (Bankr. E.D. Tenn. 1998).

17

"A bankruptcy court is authorized to enter final judgment in a core bankruptcy proceeding referred to it by the district court." *Yancey v. Varner (In re Pucci Shoes, Inc.)*, 120 F.3d 38, 40 (4th Cir. 1997).

Section 157 of 28 U.S.C., which confers bankruptcy jurisdiction upon the bankruptcy courts, provides as follows:

### § 157. Procedures

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to–

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

18

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

19

(4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).

(5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.  In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

(e) If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

20

28 U.S.C. § 157.

Thus, "Bankruptcy judges may also hear non-core related proceedings, but they may not enter final orders; in such cases they are usually required to submit proposed findings and conclusions to the district court where they are subject to *de novo* review." *Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 399 (1992), citing 28 U.S.C. § 157(c).

Local District Rule 402 of the United States District Court for the District of Maryland implements Section 157, and provides as follows:

### Rule 402.  Referral of Bankruptcy Cases and Proceedings.

Pursuant to 28 U.S.C. § 157(a), all cases under Title 11 of the United States Code and proceedings arising under Title 11 and arising in or related to cases under Title 11 shall be deemed to be referred to the Bankruptcy Judges of this District.

Rule 402 of the Md. District Rules as amended, August 16, 2004.

In *A.H. Robins v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), the Fourth Circuit endorsed the following definition of "related to" jurisdiction set forth in *Pacor v. Higgins*, 743 F.2d 984, 994 (3d. Cir. 1984): "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and

21

administration of the bankrupt estate." 788 F.2d at 1002, n.11;[10] *New Horizon of N.Y., LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. 2000); *Travelstead v. Velazquez (In re Travelstead)*, 250 B.R. 862, 866 (D. Md. 2000).

In *Boyer v. Conte (In re Import & Mini Car Parts, Ltd., Inc.)*, 200 B.R. 857 (Bankr. D. Ind. 1996), *aff'd, sub nom. Miller v. Conte*, 203 B.R. 124 (N.D. Ind. 1996), *aff'd sub nom. In re Mini Car Parts, Ltd., Inc.*, 97 F.3d 1454 (7th Cir. 1996) (Table), 1996 WL 554450, the bankruptcy court entered a judgment in favor of the Chapter 7 trustee against one Conte, the debtor's former principal. The trustee assigned the judgment to Miller as trustee for administrative creditors of the bankruptcy estate.

---

[10]In its most recent pronouncement on the subject, in the case of *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 836, decided May 17, 2007, the Fourth Circuit reiterated its reliance on *Pacor*:

> . . . This Court, like the majority of the other circuits, has adopted the test articulated by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984), for determining "related to" jurisdiction. *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n. 11 (4th Cir.1986). In short, "'the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 625 (4th Cir.1997) (*quoting Pacor*, 743 F.2d at 994). Therefore, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and [it] in any way impacts upon the handling and administration of the bankruptcy estate." Id. at 625-26; *see also Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1255-56 (4th Cir.1997).

*Id*.

22

The court entered a garnishment against Conte's wages, but only a portion of the judgment was collectable. Miller then filed a motion for supplementary proceedings[11] against Conte and three others in the bankruptcy court to set aside an allegedly fraudulent transfer by Conte and also to avoid an allegedly fraudulent mortgage. The bankruptcy court denied the motion on the ground that it did not have subject matter jurisdiction to entertain it and to grant the requested relief, because the matter was not "related to" the bankruptcy estate. The court described the matter before it as "a garden variety fraudulent conveyance action, governed by state law," and stated that "its only connection with the bankruptcy court is that the debt in question happens to be represented by a judgment which this court issued in favor of a bankruptcy trustee." 203 B.R. at 127. In addition, the bankruptcy court held that the trustee's assignment of the judgment to a different claimant caused the judgment to "pass out of the estate," requiring "a new source of jurisdiction if further disputes involving it are to remain in federal court." *Id*. On appeal, the district court affirmed, holding that the subject matter jurisdiction of the bankruptcy court extends only those disputes "related to" the

_____

[11]A number of opinions employ the terms "ancillary jurisdiction" and supplementary jurisdiction" interchangeably to denote the exercise of federal jurisdiction over third-party claims. The instant opinion is principally concerned with supplementary jurisdiction in the sense of "supplementary proceedings," defined as "proceedings supplementary to an execution, directed to the discovery of the debtor's property and its application to the debt for which the execution is issued." *Black's Law Dictionary*, 4th ed. (Revised) 1968.

23

bankruptcy estate that "affects the amount of property available for distribution or the allocation of property among creditors."  203 B.R. at 129, *citing Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987).

As in the instant case, the issues raised in the motion to avoid fraudulent conveyances in the *Boyer* case were different from those that resulted in the original judgment.  As in the instant case, the other respondents to the motion were not parties to the original judgment and therefore, were not subject to any claims of the estate or its creditors that "related to" the bankruptcy case.  203 B.R. at 130.

A number of decisions stand for the proposition that federal bankruptcy jurisdiction does not even authorize bankruptcy courts to enforce their own nondischargeable judgments.  If this view is correct, bankruptcy courts have no postjudgment subject matter jurisdiction even in core proceedings in which a bankruptcy court may issue final judgments.  *In re Miller*, 248 B.R. 198, 200 (Bankr. M.D. Fla. 2000) (bankruptcy court had no "related to" jurisdiction to authorize nondischargeable judgment creditor to garnish Chapter 7 debtor's postpetition wages, which were not property of the Chapter 7 bankruptcy estate.); *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1023 (5th Cir. 1999) (bankruptcy court lacked jurisdiction over suit by creditors against trustees of debtor's spendthrift trust to collect nondischargeable judgment.); *A.M.S. Printing Corp. v. Wernick (In re Wernick)*, 242

B.R. 194, 196-7 (Bankr. S.D. Fla. 1999) (same.); *Edwards v. Sieger (In re Sieger)*, 200 B.R. 636, 639 (Bankr. N.D. Ind. 1996) (holding that once a bankruptcy court has entered judgment on a nondischargeable debt, its "jurisdictional mission has been fulfilled."); *HOC, Inc. v. McAllister (In re McAllister)*, 216 B.R. 957, 965, 969 (Bankr. N.D. Ala. 1998) (bankruptcy court had no "related to" jurisdiction over postjudgment garnishment proceeding.); *Langella v. Weisz*, 39 B.R. 615, 619 (E.D. N.Y.1984) (district court did not have subject matter bankruptcy jurisdiction to enforce nondischargeable judgment by avoiding postjudgment fraudulent conveyance in the absence of federal question.). *See also Enforcing Nondischargeable Money Judgments: the Bankruptcy Courts' Dubious Jurisdiction*, 74 Am. Bankr. L.J. 115, 128 (2000).

This view was rejected in *McCowan v. Fraley (In re McCowan)*, 296 B.R. 1 (B.A.P. 9th Cir. 2003) (bankruptcy court had "arising under" jurisdiction to issue garnishment against a debtor as continuation of original nondischargeability proceeding.), quoting *Peacock v. Thomas*, 516 U.S. 349, 359, 116 S.Ct. 862, 133 L. Ed.2d 817 (1996):  "The rationale is that a federal court has 'ancillary enforcement jurisdiction' that is automatically available for use 'in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments.' . . . 'Such ancillary jurisdiction is regarded as fundamentally a creature of necessity.'" 296 B.R.

at 3. (Citations omitted.)  *See also Harpley v. Five Star Tickets, Inc. (In re Premier Sports Tours)*, 283 B.R. 601, 604 (Bankr. M.D. Fla. 2002) (bankruptcy court has ancillary subject matter jurisdiction to issue garnishments in favor of trustee against third parties who admit they owe money to the judgment debtor, citing *American Freight System, Inc. v. Temperature Systems, Inc. (In re American Freight System, Inc.)*, 173 B.R. 739, 742 (Bankr. D. Kan. 1994) (bankruptcy court had ancillary subject matter jurisdiction over judgment debts owed to debtor by out-of-state garnishees.); *Reedy v. Reedy (In re Reedy)*, 247 B.R. 742, 745 (Bankr. E.D. Tenn. 1999) (bankruptcy court has power to issue  a writ of execution to enforce a nondischargeable judgment for alimony against a debtor).

In *Stark v. Fifarek (In re Fifarek)*, 370 B.R. 754 (Bankr. W.D. Mich. June 20, 2007), 2007 WL 1932090, the bankruptcy court held that it possessed subject matter jurisdiction to extend a prior nondischargeable judgment against the debtor upon motion by an assignee of the judgment, because the original judgment was entered in a core proceeding.  While the issue before the court was not whether the assignee was able to employ garnishment proceedings in the bankruptcy court to collect the judgment, the decision that the court had jurisdiction to extend the judgment was based upon its belief that "[b]ankruptcy courts have the power and authority to

26

interpret and enforce their judgments and orders," including "subsequent actions to collect money judgments that were issued by the court."  Fifarek, at *1.

The case of *Wellington Apt., LLC v. Clotworthy (In re Wellington Apt. LLC)*, 353 B.R. 465 (Bankr. E.D. Va. 2006), decided by a bankruptcy court in the Fourth Circuit, held that in the context of a post-confirmation Chapter 11 case, the bankruptcy court had "related to" jurisdiction, as well as ancillary jurisdiction, to enforce a judgment in favor of the Chapter 11 debtor, where the collection of the judgment was implied by the terms of the confirmed plan.  353 B.R. at 471-3.

In *Peacock v. Thomas, supra*, after endorsing the view that federal courts are empowered to enforce their own judgments,[12] the Supreme Court held that a district court did not have subject matter jurisdiction over a subsequent suit brought by an ERISA[13] plaintiff against the alter ego of his corporate employer against which he had obtained a judgment for benefits in the earlier suit.  The second suit was brought to pierce the corporate veil and hold individually liable for the judgment a corporate

---

[12]"We have recognized that a federal court may exercise ancillary jurisdiction '(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Peacock*, 516 U.S. at 355, citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379-380, 114 S.Ct. 1673, 1676, 128 L. Ed.2d 391 (1994).

[13]The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*.

officer who it alleged had diverted corporate assets to himself in order to defeat the judgment. Although decided under either the jurisdictional provision of ERISA contained in 29 U.S.C. § 1331 or federal question jurisdiction provided for in 28 U.S.C. § 1332, the decision stands for the proposition that the district court did not have ancillary jurisdiction to entertain the second suit "to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment."[14] In so holding, Justice Thomas, speaking for the eight Justices in the majority, stated:

> . . . In a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction. *See Kokkonen [ v. Guardian Life Ins. Co.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L. Ed.2d 391 (1994)] at 380-381, 114 S.Ct., at 1677; *H.C. Cook Co. v. Beecher*, 217 U.S. 497, 498-499, 30 S.Ct. 601, 601-602, 54 L.Ed. 855 (1910). Consequently, claims alleged to be factually interdependent with and, hence, ancillary to claims brought in an earlier federal lawsuit will not support federal jurisdiction over a subsequent lawsuit. The basis of the doctrine of ancillary jurisdiction is the practical need "to protect legal rights or effectively to resolve an entire, logically entwined lawsuit." [*Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L. Ed.2d 274 (1978], 437 U.S., at 377, 98 S.Ct., at 2404. But once judgment was entered in the original ERISA suit, the ability to resolve simultaneously factually intertwined issues vanished. . .

---

[14]Another important basis for the *Peacock* decision was the recognition "that efforts to hold corporate officers vicariously liable for their firms' pension debts arise under state rather than federal law, and that an effort to 'pierce the corporate veil' to collect a judgment under ERISA therefore belongs in state court." *Bd. of Trustees v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000).

*Peacock v. Thomas*, 516 U.S. at 355, 116 S.Ct. at 867, 116 L. Ed.2d at 825.[15]  Applied

in *Ellis v. All Steel Const., Inc.*, 389 F.3d 1031, 1033-34 (10th Cir. 2004).[16]

There is a divergence of views among federal courts whether the holding in

*Peacock* limits the supplementary jurisdiction of district courts to enforce federal

judgments in a separate suit to avoid fraudulent conveyances by judgment debtors.

In *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100 (2d Cir. 2001), the Second

Circuit held that a cause of action by a judgment creditor to avoid fraudulent

conveyances was within the scope of the district court's enforcement jurisdiction.

*Accord*, *Thomas, Head and Greisen Employees Trust v. Buster*, 95 F.3d 1449, 1453

(9th Cir.1996) ("There can be little question that federal courts generally possess the

power to protect their judgments by setting aside fraudulent conveyances of the

judgment debtor," citing *Swift & Co. Packers v. Compania Colombiana Del Caribe,*

---

[15]The lone dissenter in *Peacock*, Justice Stevens, disagreed, believing as did the Fourth Circuit and the U.S. District Court for the Eastern District of South Carolina that the jurisdiction of the federal court "is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied."  516 U.S. at 359, 116 S.Ct. at 862, 133 L. Ed.2d at 828 (quoting Chief Justice Marshall in *Wayman v. Southard*, 10 Wheat 1, 23, 6 L. Ed. 253 (1825).  It was Justice Stevens' opinion that "jurisdiction encompasses a claim by a judgment creditor that a party in control of the judgment debtor has fraudulently exercised that control to defeat satisfaction of the judgment."  516 U.S. at 360-1, 116 S.Ct. at 869-70, 133 L. Ed.2d at 828.

[16]*But see C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 133 (4th Cir. 2002), in which the Fourth Circuit held that the district court had supplementary jurisdiction over a second suit to pierce the corporate veil based upon the independent federal jurisdictional basis of diversity jurisdiction.

*S.A.*, 339 U.S. 684, 694-95, 70 S.Ct. 861, 867-68, 94 L. Ed. 1206 (1950)).  A contrary result was reached in *Galuska v. Geoquest, Inc.*, 172 F.3d 53 (7th Cir.1998), where the Seventh Circuit affirmed the determination by the district court that subject matter jurisdiction did not exist, and held that *Peacock* foreclosed the view that ancillary enforcement jurisdiction exists in a subsequent action based on state law claims to enforce a prior federal judgment against non-diverse third parties.  *Accord, Knox v. Orascom Telecom Holding S.A.E.*, 477 F. Supp.2d 642, 648 (S.D. N.Y. Mar. 12, 2007) (finding no ancillary jurisdiction over a turnover action against a third party who owed money to the judgment debtor), *motion for recon. denied,* 242 F.R.D. 251 (S.D. N.Y. Apr. 19, 2007); *Williams v. Pfeffer*, 117 F. Supp. 2d 331, 335 (S.D. N.Y. 2000) (finding no ancillary jurisdiction over subsequent action to recover state law fraudulent conveyances when there was no diversity and  jurisdiction in original action for looting of company was based on diversity).

There is a debate over whether bankruptcy courts possess the same supplementary jurisdiction as do district courts to enforce their own judgments, pursuant to 28 U.S.C. § 1367, which provides as follows:

### § 1367.  Supplemental jurisdiction

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to

claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if–

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

(e) As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

*Id.*

The following decisions stand for the proposition that bankruptcy courts have supplementary jurisdiction: *Heartwood 11, LLC v. DeKalb County (In re Hospitality Ventures/LaVista )*, 358 B.R. 462, 470-81 (Bankr. N.D. Ga. Jan. 4, 2007) (because 28 U.S.C. §§ 1334 and 1367 are coextensive, when a district court refers its bankruptcy jurisdiction to the bankruptcy court to adjudicate matters "related to" a bankruptcy case, it also refers its supplementary jurisdiction to hear "third party" claims.); *Sasson v. Sokoloff ( In re Sasson)*, 424 F.3d 864, 868-9 (9th Cir.2005), *cert. denied*, ___ U.S. ___, 126 S.Ct. 2890, 165 L. Ed.2d 917 (2006) (bankruptcy court's "related to" jurisdiction also includes the district court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, in addition to its "traditional equitable powers," so it may enter a separate, nondischargeable money judgment after a state court judgment has liquidated the debt.[17]); *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194-5 (9th Cir.2005) (bankruptcy court had postconfirmation "related to" and supplementary jurisdiction over state tort and contract claims brought by trustee

---

[17]On this latter point, *In re Sasson* is *contra* to the opinion of the Fourth Circuit in *In re Heckert*, 272 F.3d at 257 (4th Cir. 2001), which held that "the bankruptcy court's entry of its own money judgment to replace the state court judgment is barred by *res judicata*." *Id.*

against state environmental agency.); *Klein v. Civale & Trovato, Inc. (In re Lionel Corp.)*, 29 F.3d 88, 92 (2d Cir.1994) (in core proceeding involving lessor's claim against lessee in Chapter 11 to require debtor to discharge mechanic's liens, bankruptcy court had supplementary jurisdiction to entertain lessor's claims against mechanic's lienor.); *Goger v. Merchants Bank of Atlanta (In re Feifer Indus.)*, 141 B.R. 450, 452-3 (Bankr. N.D. Ga. 1991) (in suit by trustee to determine validity and priority of liens, defendant creditor's third-party complaint against another creditor was not within bankruptcy court's ancillary or pendent jurisdiction.); *Official Committee of Unsecured Creditors v. Riviera Med. Dev. Corp. (In re South Bay Med. Assocs.)*, 184 B.R. 963, 970 (Bankr. C.D. Cal. 1995) (bankruptcy court had ancillary jurisdiction over preference defendant's cross complaint for indemnity.); *Hawkins v. Eads ( In re Eads)*, 135 B.R. 387, 393-5 (Bankr. E.D. Cal. 1991) (in suit brought by trustee against debtor and third party to recover fraudulent transfers, bankruptcy court had "related to" and pendent jurisdiction to hear third party claim brought by transferee against nondebtor for malpractice.); *Dechert Price & Rhoads v. Direct Satellite Communications, Inc. (In re Direct Satellite Communications, Inc.)*, 91 B.R. 5, 6-7 (Bankr. E.D. Pa. 1988) (in suit by debtor that was core proceeding, bankruptcy court could exercise pendent jurisdiction over claims against third-party defendants, where claims arose out of a "common nucleus of operative facts" as debtor's "core"

claims against defendant.).  *See also* Brubaker, *On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory*, 41 WM. & MARY L. REV. 743, 854 (2000).

    *Contra, Enron Corp. v. Citigroup, Inc. (In re Enron Corp.)*, 353 B.R. 51, 56-58 (Bankr. S.D. N.Y. 2006) (in suit brought by Chapter 11 debtor to recover preferences and equitably subordinate claims, bankruptcy court did not have supplementary jurisdiction under § 1367 to entertain third party claims brought by transferee against accounting firm.); *Walker v. Cadle Co. (Matter of Walker),* 51 F.3d 562, 570-71 (5th Cir. 1995) (in suit by Chapter 7 debtor against mortgagee for violating the automatic stay, the bankruptcy court did not have supplementary jurisdiction over third party contribution claim of mortgagee.); *Halvajian v. Bank of New York, N.A. (In re Halvajian),* 191 B.R. 56, 58-59 (D. N.J. 1995) (in suit brought by Chapter 11 debtor against bank based upon prepetition settlement agreement, bankruptcy court did not have supplementary jurisdiction to hear third party complaint brought by bank for indemnification based upon state law.); *Premium of America, LLC v. Sanchez (In re Premium Escrow Services, Inc.)*, 342 B.R. 390, 402-03 (Bankr. D.D.C. 2006) (in postconfirmation suit brought by litigation trust against physicians based upon claims of debtor and investors, bankruptcy court did not have supplementary jurisdiction over the investors' claims.); *HA2003 Liquidating Trust v. Carramore Ltd. (In re Ha-Lo*

34

*Industries, Inc.)*, 330 B.R. 663, 672-73 (Bankr. N.D. Ill. 2005) (bankruptcy court did not have ancillary jurisdiction over fraudulent transferee's third party claim for indemnification against debtor's principals.); *Securities Investor Protection Corp. v. Murphy (In re Selheimer & Co.)*, 319 B.R. 384, 390 (Bankr. E.D. Pa. 2005) (in suit against individual partner of debtor partnership for liability for partnership debts, bankruptcy court did not have supplementary jurisdiction over third party complaint against fellow partners for contribution and indemnity.); *Davis v. Victor Warren Properties, Inc. (In re Davis)*, 216 B.R. 898, 902 (Bankr. N.D. Ga. 1997) (in suit by Chapter 13 debtor to set aside prepetition foreclosure sale, bankruptcy court did not have supplementary jurisdiction over count in complaint alleging that sale was not conducted according to state law.); *Adams v. Prudential Securities, Inc. (In re Foundation for New Era Philanthropy)*, 201 B.R. 382, 397-98 (Bankr. E.D. Pa. 1996) (bankruptcy court did not have statutory authority to exercise supplementary jurisdiction over third party indemnification complaint brought by fraudulent transferee against others.); *Southtrust Bank of Dothan, N.A. v. Alpha Steel Co., Inc. (In re Alpha Steel Co., Inc.)*, 142 B.R. 465, 470 (M.D. Ala. 1992) (bankruptcy court did not have ancillary jurisdiction and properly refused to exercise pendent jurisdiction over two counterclaims by defendant that alleged fraud against bank that brought declaratory judgment action.); *Romar Int'l. Georgia, Inc. v. Southtrust Bank*

*of Alabama, N.A. (Matter of Romar Int'l Georgia, Inc.)*, 198 B.R. 401, 406-07 (Bankr. M.D. Ga.1996) (bankruptcy court lacked supplementary jurisdiction over state law lender liability suit brought by Chapter 11 debtor's guarantors against debtor's lender.). *See also* Block-Lieb, *The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis*, 62 FORDHAM L. REV. 721 (1994).

A district court exercising bankruptcy jurisdiction has supplementary jurisdiction to execute and enforce its judgments, limited only by the strictures enunciated in *Peacock* and other cases. *Sasson v. Sokoloff ( In re Sasson)*; 424 F.3d at 869; *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996) (district court had discretion to exercise supplementary jurisdiction rather than remand state claims that were part of removed law suit after it dismissed all bankruptcy-related claims.); *Publicker Indus. Inc. v. United States ( In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 113-14 (2d Cir.1992) ("Given an independent jurisdictional source like that provided by § 1334(b), federal courts possess supplemental jurisdiction over related [environmental] claims," citing § 1367(a).); *Allen v. Kuhlman Corp.*, 322 B.R. 280, 283 (S.D.Miss. 2005) ("[E]ven were the claims against the other non-debtor defendants not sufficiently 'related to [the] bankruptcy to bring them within the court's bankruptcy jurisdiction, it appears that the court would nevertheless have

supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367

which it would choose to exercise.").

### CONCLUSIONS OF LAW

1.  As the Supreme Court stated in *Celotex Corp. v. Edwards*, 514 U.S. at 307,

115 S.Ct. at 1498, 131 L. Ed.2d at 410:

> The jurisdiction of the bankruptcy courts, like that of other federal
> courts, is grounded in, and limited by, statute.  Title 28 U.S.C. § 1334(b)
> provides that "the district courts shall have original but not exclusive
> jurisdiction of all civil proceedings arising under title 11, or arising in or
> related to cases under title 11."  The district courts may, in turn, refer
> "any or all proceedings arising under title 11 or arising in or related to a
> case under title 11 ... to the bankruptcy judges for the district."

*Id.*[18]

2.  The determination already made by the district court that the instant

adversary proceeding is a non-core proceeding is binding on this Court.  The district

court has referred to this Court the determination in the first instance whether the

instant cause of action is "related-to" the Transcolor bankruptcy case, so as to confer

---

[18]  The issue presented in *Celotex v. Edwards* was whether, in a Chapter 11
reorganization case, the bankruptcy court had subject matter jurisdiction to grant a
temporary restraining order that enjoined a debtor's judgment creditors from
executing against a *supersedeas* bond posted by the debtor to stay the judgment
pending appeal, after the judgment was affirmed and the debtor filed bankruptcy.  In
holding that the bankruptcy court had "related to" jurisdiction to enter the injunction,
the Supreme Court stated that the language of 28 U.S.C. § 1334(b) was broad enough
"to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more
than simple proceedings involving the property of the debtor or the estate," 514 U.S.
at 308, 115 S.Ct. at 1499, 131 L. Ed.2d at 411, with the caveat that such jurisdiction,
while broader in Chapter 11 than in Chapter 7, is not unlimited.  *Id.*

subject matter jurisdiction upon the federal courts.  This Court has determined that it has neither "related to" nor supplementary jurisdiction over the instant complaint.

3.  In appropriate cases, a bankruptcy court that enters a federal judgment in a core proceeding, over which it has undoubted subject matter jurisdiction, may also execute and enforce the judgment to the point of execution and collection.  This is not such a case.

4.  In a proceeding that is non-core and not "related to" the bankruptcy case, neither the bankruptcy court nor the district court has bankruptcy subject matter jurisdiction.

5.  A bankruptcy judgment is a federal judgment that is not inferior to any other judgment entered by any other federal court.  As adjuncts of the district courts, bankruptcy courts have the same inherent powers as any other federal courts to enforce their judgments.  Judgments entered by bankruptcy courts have "the same effect as district court judgments when properly registered."  *Heckert v. Dotson (In re Heckert)*, 272 F.3d 253, 259 (4th Cir. 2001), citing 28 U.S.C. § 1963.[19]

---

[19]Section 1963 provides as follows:

### § 1963. Registration of judgments for enforcement in other districts

A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of

38

6.   In appropriate cases, a bankruptcy court has limited subject matter jurisdiction to enforce a bankruptcy judgment that has been assigned to a third party because it is a federal judgment that can be enforced during the life of the judgment. Supplementary bankruptcy jurisdiction may even exist to enforce the judgment after the underlying bankruptcy case is closed in the absence of jurisdiction in the state courts to do so.  *See Osteoimplant Technology, Inc.  v. Rathe Productions, Inc.*, 107 Md.App. 114, 666 A.2d 1310 (1995), *cert. denied*, 341 Md. 648, 672 A.2d 623 (1996). (judgment debtor that moved in state court to vacate, alter or amend judgment must apply to the federal district court in which the judgment was entered.).

7.  The supplementary jurisdiction of bankruptcy courts to enforce judgments is more limited than that of the district courts.  *Peacock*, *supra*, where the Supreme

---

International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. Such a judgment entered in favor of the United States may be so registered any time after judgment is entered. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

A certified copy of the satisfaction of any judgment in whole or in part may be registered in like manner in any district in which the judgment is a lien.

The procedure prescribed under this section is in addition to other procedures provided by law for the enforcement of judgments.

*Id*.

Court held that an independent federal basis for jurisdiction must exist. This is because bankruptcy courts do not possess the other bases of exercising federal jurisdiction that exist in the district courts, including diversity and federal question jurisdiction. It must be remembered that *Peacock* was based on jurisdiction conferred by ERISA or federal question.

8. Bankruptcy courts may issue garnishments on final judgments entered in core proceedings. Federal Rule of Bankruptcy Procedure 7069 makes Federal Rule of Civil Procedure 69 applicable to bankruptcy proceedings, and because bankruptcy proceedings are referred to bankruptcy courts by Section 157, bankruptcy courts may employ the provisions of F. R. B. P. 7069 in the enforcement of their own judgments. *See NVLand, Inc. v. Vogel (In re Ocean Downs Racing Ass'n., Inc.)*, 164 B.R. 249, 254 (Bankr. D. Md. 1993) (Federal Rule of Bankruptcy Procedure 7069 makes applicable to bankruptcy proceedings the same postjudgment procedures followed in the U.S. district courts.).[20]

9. However, beyond issuing garnishments, the postjudgment jurisdiction of bankruptcy courts is limited by Section 1334. Unless a subsequent lawsuit to enforce a bankruptcy judgment is within the subject matter jurisdiction of the bankruptcy

---

[20]In entertaining the postjudgment inquisition of the Lapideses in the first suit, this Court invoked its supplementary jurisdiction to enforce the judgment.

40

court, as either under, arising under, arising in or related to a case under Title 11, it may not be maintained in the bankruptcy court.

10.  According to the definition of "related to" jurisdiction set forth in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d. Cir. 1984), the instant suit is not within the bankruptcy jurisdiction of the federal courts because it is not "related to" the Transcolor bankruptcy case.  The motion to dismiss must be granted because the relief requested by M&I Trust is too attenuated from the bankruptcy estate to confer subject matter jurisdiction upon this Court.

11.  "Related to" bankruptcy jurisdiction is no broader when invoked in an Article III U.S. district court than in an Article I bankruptcy court, except that the district court may enter final orders, whereas the bankruptcy court may only hear the matters and make reports and recommendations to the district court.  Thus, in the absence of an independent ground for federal jurisdiction, the district court does not have supplementary jurisdiction to hear this matter.[21]

12.  Regardless of whether the bankruptcy court has inherent supplementary jurisdiction to enforce its own judgments, or whether it may invoke the supplementary jurisdiction conferred by Congress pursuant to 28 U.S.C. § 1367, the instant suit is not within such jurisdiction according to the edicts of *Peacock v. Thomas, supra*.  In

---

[21]The joinder of the Chapter 7 trustee as a plaintiff in this action appears to have deprived the federal courts of diversity jurisdiction.

addition, as with supplementary jurisdiction, "related to" jurisdiction may also be limited by considerations of comity with state courts and discretionary and mandatory abstention.

13.   Because the federal judgment issued originally by this Court has been domesticated by its having been filed among the Land Records of Anne Arundel County, *see* the Maryland Uniform Enforcement of Judgments Act, Md. Code Ann., Cts. & Jud. Proc. Code, §  11-801 *et seq*., there is no necessity for this Court to enforce the judgment pursuant to its supplementary jurisdiction.  The judgment may now more appropriately be enforced by the plaintiff in the state courts of Maryland that have subject matter jurisdiction over the property and the judgment.  *Boyer v. Conte*, 200 B.R. at 861-2.

14.   While Count III of the complaint seeks to avoid the postjudgment transfer by Pamela and Morton to the Q-Tip Trust, its success is dependent upon the plaintiff's ability to discredit the prejudgment (1978) deeds from Morton to himself and Pamela that the plaintiff contends failed to create a tenancy by the entireties in real and personal property.[22]

_____

[22]Property both real and personal that are held by a husband and wife as tenants by the entireties are not subject to the satisfaction of the individual debts of either spouse.  *Birney v. Smith (In re Birney)*, 200 F.3d 225, 227 (4th Cir. 1999), citing *Watterson v. Edgerly*, 40 Md. App. 230, 388 A.2d 934, 938 (1978); *Diamond v. Diamond*, 298 Md. 24, 29, 467 A.2d 510, 513 (1983).  However, by reason of the fact that the Lapideses were not yet married on the date of the execution of the 1978 deed,

15.  This Court has found no case, and indeed, the plaintiffs have cited none, in which it was held that a federal court possessed subject matter jurisdiction to avoid such a prejudgment transfer that occurred nearly 25 years before the federal judgment was rendered.

16.  Federal bankruptcy jurisdiction may not be invoked pursuant to 28 U.S.C. § 1334 to (1) declare the nature of ownership interests of non-debtors in non-estate real and personal property resulting from transfers between non-debtors that occurred more than 13 years prior to the filing of the earliest bankruptcy case (Alleco) in 1992, and 20 years before the latest bankruptcy case (Transcolor) was filed in 1998; (2) declare that that transfers of real property between non-debtors that occurred in 1995, nearly three years before the Transcolor case was filed, were fraudulent conveyances under state law; (3) declare that transfers between non-debtor individuals and a Q-Tip Trust were fraudulent conveyances as to a judgment creditor of the debtor; and (4) enjoin further transfers or encumbrances of such property.

---

the plaintiff contends that a tenancy by entireties was not created, because such a tenancy cannot exist in two persons who are not legally husband and wife. *Lopez v. Lopez,* 250 Md. 491, 510, 243 A.2d 588, 599 (1968).  The intention to create a tenancy by the entireties by means of a transfer to two unmarried persons does not create such a tenancy in the absence of a valid marriage existing between the transferees at the time of the transfer, and a subsequent valid marriage between them does not convert the estate into a tenancy by the entireties. *Schwarz v. U.S.*, 191 F.2d 618, 621 (4th Cir. 1951); *Young v. Young*, 37 Md. App. 211, 216-17, 376 A.2d 1151, 1155 (1977).  Instead, the conveyance results in the creation of a joint tenancy. *Crosby v. Crosby*, 769 F. Supp. 197, 200 (D. Md. 1991).

43

17.  At the time the judgment was entered by this Court against Morton, and well before then, the real and personal property subject to recovery in the present suit were beyond the reach of his individual creditors because of their ownership as tenancy by the entireties property.

18.  The instant and former complaints do not share common issues of law and fact.  The avoidance and recovery of the transfers at issue here are not based upon allegations or causes of action contained in the first complaint.  The property which the present complaint seeks to recover cannot be traced to any fraud or defalcation alleged in the earlier complaint to have committed against the debtor corporation or its creditors by Morton.

19.   The cause of action presented in the instant case to recover non-estate property is so tangential to the bankruptcy case that that it will not have a minimal impact on the administration of the debtor's estate, which is the most important component in "related to" jurisdiction.  The judgment held by the plaintiff is not property of the estate.  While the trustee of the Transcolor estate may have a contingent interest in any recovery by reason of the side agreement between herself and the judgment creditor/plaintiff, such a recovery is too speculative to affect the administration of the bankruptcy estate as required by *Pacor*, *supra*.  The Transcolor bankruptcy case has been dormant for nearly two years.  Finding of Fact No. 45.  The

judgment has been uncollectible since it was rendered more than four years ago. Finding of Fact No. 21.

20.   A second, non-core proceeding that is filed in the bankruptcy court to enforce a judgment entered in an earlier suit must be at least "related to" the underlying bankruptcy case and within the bankruptcy court's supplementary jurisdiction in order to satisfy the requirements of *Pacor* and *Peacock*, *supra*.  Because the instant suit is within neither type, it must be dismissed for lack of subject matter jurisdiction.

*ORDER ACCORDINGLY.*

cc:  Gregory A. Cross, Esquire
     John A. Roberts, Esquire
     Charles M. Campisi, Esquire
     Venable LLP
     2 Hopkins Plaza, 1800 Mercantile Bank Bldg.
     Baltimore, Maryland  21201
     Counsel to the plaintiff, Marshall & Ilsley Trust Co., N.A.

     Marc Robert Kivitz, Esquire
     201 N. Charles Street, Suite 1330
     Baltimore, Maryland  21201
     Counsel to the defendant, Morton M. Lapides, Sr.

     Alan M. Grochal, Esquire
     Megan K. Mechak, Esquire
     Tydings and Rosenberg
     100 E. Pratt Street, 26th Floor
     Baltimore, Maryland  21202
     Counsel to defendant, Pamela B. Lapides

     Carl J. Tenner, Esquire
     150 South Street, Suite 206
     Annapolis, Maryland  21401
     Counsel to defendants, Craig Dranbauer, Matthew Lapides
     and the Pamela Lapides Q-Tip Trust

     Monique D. Almy, Esquire
     Crowell & Moring LLP
     1001 Pennsylvania Avenue, N.W.
     Washington, D.C.  20004-2595
     Chapter 7 Trustee

     Office of the United States Trustee
     2625 U.S. Courthouse
     101 W. Lombard Street
     Baltimore, Maryland 21201